Guy Alsentzer
PO Box 128
Bozeman, MT 59771
(406) 570-2202
GuyAlsentzer@gmail.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

FRIENDS OF ANIMALS
777 Post Road, Suite 205                    Civ. No. _____
Darien, CT 06820

       Plaintiff,

v.

RYAN ZINKE, in his official
capacity as the Secretary of the Interior,
U.S. Department of the Interior
1849 C Street, NW
Washington, D.C. 20240;

GREG SHEEHAN, in his official
capacity as Deputy Director of the U.S.
Fish and Wildlife Service,
U.S. Department of the Interior
1849 C Street, NW
Washington, D.C. 20240;and

U.S. FISH AND WILDLIFE SERVICE, an
agency of the United States
1849 C Street, N.W.
Washington, D.C. 20240

       Defendants.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.      Plaintiff brings this action against Defendants Ryan Zinke and Greg Sheehan, in their official capacities as Secretary of the Interior and Deputy Director of the U.S. Fish and Wildlife Service, respectively, to challenge the U.S. Fish and Wildlife Service's violation of the Endangered Species Act, 16 U.S.C. §§ 1531–1544, by failing to take action required by subsections 4(b)(3)(A)–(B), on Plaintiff's June 12, 2017 petition to list the Pryor Mountain wild horse population as a threatened or endangered distinct population segment.

2.      The U.S. Fish and Wildlife Service (FWS) must maintain the Pryor Mountain wild horse population. Plaintiff filed a petition to list the Pryor Mountain mustang as a threatened or endangered distinct population segment pursuant to the Endangered Species Act (ESA). In its petition, Plaintiff used the best scientific and commercial evidence available to illustrate that the Pryor Mountain wild horse population is essential for the preservation of the Old Spanish genetic lineage of wild horses. The population's current, significantly small size is detrimental to its survival and is likely to reduce its resiliency, result in a genetic bottleneck, and place the entire population at risk of extinction.

3.     On September 27, 2016, and effective on October 27, 2016, FWS promulgated a new regulation regarding the petition process for listing a species. This regulation requires among other things, a petitioner to certify that a copy of its petition was provided to state agencies at least thirty days prior to the petition's submission to FWS. 50 C.F.R. 424.14 (b).[1]

4.     FWS's promulgated regulation violates the ESA, 16 U.S.C. §§ 1531–1544, and is arbitrary, capricious, and contrary to law within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706.

5.     In requiring Plaintiff to certify that a copy of its petition was provided to state agencies at least thirty days prior to submission to FWS, Defendants: (1) improperly considered consultation with state agencies prior to the initial 90-day finding; (2) failed to make a timely finding on whether the petition presented information that listing may be warranted "[t]o the maximum extent practicable, within 90 days after receiving the petition" 16 U.S.C. § 1533(b)(3)(A); and (3) applied an arbitrary standard in violation of

---

[1] The language reads, "Notification of Intent to file petition: For a petition to list, delist, or reclassify a species, or for petitions to revise critical habitat, petitioners must provide notice to the State agency responsible for the management and conservation of fish, plant or wildlife resources in each State where the species that is the subject of the petition occurs. This notification must be made at least 30 days prior to submission of the petition. This notification requirement shall not apply to any petition submitted pertaining to a species that does not occur within the United States." *Id.*

the ESA.

6. Plaintiff seeks declaratory and injunctive relief reversing FWS's refusal to issue a 90-day finding on its petition to list the Pryor Mountain mustang population, and directing Defendants to proceed with issuing a 90-day finding on Plaintiff's petition to list the Pryor Mountain wild horse population.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as a defendant), 28 U.S.C. §§ 2201–2202 (declaratory and injunctive relief), 16 U.S.C. §§ 1540(c) and (g) (action arising under the ESA citizen suit provision), and the APA, 5 U.S.C. §§ 701–706.

8. This Court has authority to grant Plaintiff's requested relief pursuant to 28 U.S.C. §§ 2201–2202 (declaratory and injunctive relief), 5 U.S.C. §§ 701–706 (APA), and 16 U.S.C. § 1540(g) (ESA).

9. Pursuant to the ESA citizen suit provision, Plaintiff sent Defendants sixty days' notice of its intent to sue (Notice) on December 14, 2017. *See* 16 U.S.C. § 1540(g)(2).

10. Defendants received Plaintiff's Notice on December 21, 2017.

11. More than sixty days have passed since Defendants received Plaintiff's Notice.

12. Defendants responded to Plaintiff's Notice in a letter dated February 1, 2018.

13. Defendants have not remedied the ESA and APA violations. Therefore, an actual controversy exists between the parties.

14. Venue is proper in this Court pursuant to the ESA, 16 U.S.C. § 1540(g)(3)(A), and 28 U.S.C. § 1391, because Defendants, as officers and employees of the United States, have offices in this district, were acting in their official capacities and under the color of legal authority in the events or omissions giving rise to Plaintiff's claim, of which a substantial part of said events or omissions occurred in this judicial district. This case is properly filed in Billings, Montana, pursuant to Local Rule 1.2(c)(4), 3.2(b) because a substantial part of the events or omissions occurred in the Billings Division Counties.

**PARTIES**

15. Plaintiff Friends of Animals is a nonprofit, international advocacy organization incorporated in the state of New York since 1957. Friends of Animals seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living and domestic

animals. Friends of Animals engages in a variety of advocacy programs in support of these goals. Friends of Animals informs its members about animal advocacy issues as well as the organization's progress in addressing these issues through its magazine, *ActionLine*, its website, and other reports. Friends of Animals has published articles and information advocating for the protection of wildlife species so they can live unfettered in their natural habitats. In the absence of proper ESA protection, the Pryor Mountain Wild Horses are subject to curtailment, roundups, and removals that prevent the horses from roaming freely. Friends of Animals' members and staff are injured by Defendants' refusal to issue a 90-day finding on its petition to list the Pryor Mountain wild horse population as threatened or endangered.

16.     Plaintiff sues on behalf of itself and on behalf of its adversely affected members and supporters. Plaintiff has invested time and resources into protecting the Pryor Mountain wild horse population, including listing it as an endangered or threatened distinct population segment (DPS) under the ESA. Further, Plaintiff works to educate its members, supporters, and the public about the status of the Pryor Mountain wild horse population and the threats it faces.

17.     Plaintiff has members and supporters who live near or frequently visit the Pryor Mountain Wild Horse Range. They use public land in and

around the Pryor Mountain Wild Horse Range for recreational pursuits like camping, hiking, wildlife viewing, aesthetic enjoyment, and photography. These members seek to view the Pryor Mountain wild horse population throughout its range, and Defendants' refusal to issue a 90-day finding on Friends of Animals' petition interferes with members' opportunities to do so. In addition to causing irreparable ecological and genetic harm to much of the Pryor Mountain wild horse population, refusing to issue a 90-day finding and thus violating the ESA protections for the Pryor Mountain wild horse population will cause a direct injury to the recreational, conservation, cultural, aesthetic, and scientific interests that Plaintiff and its members maintain in their continued observation and study of said horse population.

18.     The educational, recreational, scientific, cultural, aesthetic, and other interests of Plaintiff and its members and supporters have been, are being, and, unless the relief requested is granted, will continue to be adversely and irreparably injured by Defendants' failure to comply with federal law and refusal to issue a 90-day finding on Plaintiff's petition to list the Pryor Mountain wild horse as an endangered or threatened DPS under the ESA. In addition, it was illegal for FWS to change the language of the ESA to include an extra thirty days to the 90-day requirement. These are actual, concrete injuries to Plaintiff, caused by Defendants' failure to comply with the ESA and

its implementing regulations, petition process, and policies. The relief requested in this Complaint would redress these injuries.

19.     Defendant Ryan Zinke, in his capacity as Secretary of the Interior, has ultimate responsibility for the implementation of the ESA, through FWS, with respect to terrestrial species such as the Pryor Mountain wild horse population. The Secretary is also responsible for the actions of his delegate, FWS, including the delegate's refusal to issue a 90-day finding on the petition to list the Pryor Mountain wild horse population. Defendant Zinke is sued in his official capacity.

20.     Defendant Greg Sheehan, in his capacity as Deputy Director of FWS, an agency within the U.S. Department of the Interior, shares responsibility for the actions of FWS and is responsible for complying with all federal laws, including the ESA. Defendant Sheehan is sued in his official capacity.

21.     Defendant United States Fish and Wildlife Service is a federal agency within the U.S. Department of the Interior. FWS is responsible for implementing and administering the ESA with respect to terrestrial wildlife such as the Pryor Mountain horse.

## STATUTORY AND REGULATORY FRAMEWORK
## OF THE ENDANGERED SPECIES ACT

22.     The purposes of the ESA are "to provide a program for the conservation of . . . endangered and threatened species" and "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). Further, pursuant to 16 U.S.C. § 1531(c), the ESA declared it to be "the policy of Congress that all Federal departments and agencies shall seek to conserve endangered species and threatened species and shall utilize their authorities in furtherance of the purposes of this chapter."

23.     In order for a species or its habitat to be protected under the ESA, the species must first be listed by the Secretary of the Interior (hereinafter, "Secretary") as either "threatened" or "endangered." *Id.* § 1533(d). Under the statutory definition, a species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" under the statute if it is "likely to become an endangered species in the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

24.     The Secretary must list a species under the ESA if it is threatened or endangered by any one or more of the following factors:

(A)  the present or threatened destruction, modification, or curtailment of its habitat or range;

(B)  overutilization for commercial, recreational, scientific, or educational purposes;

(C)  disease or predation;

(D)  the inadequacy of existing regulatory mechanisms; or

(E)  other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1).

25.     The Secretary's discretion in deciding whether to list a species is limited solely to considering these five factors. In considering these factors, the Secretary's determinations are to be made only on the basis of "the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination." 50 C.F.R. § 424.11(b); 16 U.S.C. § 1533(b)(1)(A).

26.     The ESA defines "species" to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

27.     Under the ESA, FWS may list a vulnerable distinct population segment (DPS) of a vertebrate species for protection, even if the species, when taken as a whole, would not be considered threatened or endangered. The independent listing of a threatened DPS is intended to be a preemptive measure to "protect and conserve species and the ecosystems upon which

they depend before largescale decline occurs that would necessitate listing a species or subspecies throughout its entire range." 61 Fed. Reg. 4722, 4725 (Feb. 7, 1996).

28.     FWS's decisions to designate a DPS under the ESA are guided by the joint policy adopted in 1996 by FWS and the National Marine Fisheries Service (DPS Policy). *Id.*

29.     The DPS Policy sets forth three elements that are considered in decisions regarding the status of a possible DPS as endangered or threatened:

(1)     Discreteness of the population segment in relation to the remainder of the species to which it belongs;
(2)     The significance of the population segment to the species to which it belongs; and
(3)     The population segment's conservation status in relation to the Act's standards for listing (i.e., is the population segment, when treated as if it were a species, endangered or threatened?).

*Id.*

30.     Under the DPS Policy, a population segment is considered "discrete" if it is "markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors," or is delimited by international governmental boundaries within which significant differences in conservation, management, and regulation of the species exist. *Id.*

31.     If a population is considered discrete, then its biological and

ecological significance will be considered. This consideration includes, but is

not limited to, the following factors:

(1)     Persistence of the discrete population segment in an ecological
        setting unusual or unique for the taxon;
(2)     Evidence that loss of the discrete population segment would
        result in a significant gap in the range of a taxon;
(3)     Evidence that the discrete population segment represents the
        only surviving natural occurrence of a taxon that may be more
        abundant elsewhere as an introduced population outside its
        historic range; or
(4)     Evidence that the discrete population segment differs markedly
        from other populations of the species in its genetic characteristics.

*Id.*

32.     The DPS Policy recognizes that "it may be appropriate to assign

different classification to different DPS's of the same vertebrate taxon." *Id.*

33.     The ESA gives interested persons the right to petition the

Secretary to add a species to, remove a species from, or change a listed

species' status under either the threatened or endangered listings. 5 U.S.C. §

553(e); 50 C.F.R. § 434.14. Upon receipt of such a petition, the Secretary is

required, to the maximum extent practicable within 90 days, to "make a

finding as to whether the petition presents substantial scientific or

commercial information indicating that the petitioned action **may** be

warranted." 16 U.S.C. § 1533(b)(3)(A) (emphasis added). This preliminary finding is known as a "90-day finding."

34.     By regulation, the Secretary has stated that a petition is deemed to contain substantial scientific or commercial information if it contains "information that would lead a reasonable person to believe that the measure proposed in the petition may be warranted." 50 C.F.R. § 424.14(b)(1). At the 90-day finding stage, the Secretary does not "subject the petition to critical review." 71 Fed. Reg. 66298 (Nov. 14, 2006). "A petition need not establish a 'strong likelihood' or a 'high probability' that a species is either threatened or endangered to support a positive 90-day finding." 79 Fed. Reg. 4877 (Jan. 30, 2014).

35.     If the Secretary issues a "positive" 90-day finding, concluding that listing may be warranted, then the Secretary must commence a status review of the species, to be completed within one year. 16 U.S.C. §§ 1533(b)(3)(A)–(B).

36.     After completion of the status review, the Secretary is required to make, and publish in the Federal Register, a "twelve-month finding" that either: (1) the petitioned action is not warranted; (2) the petitioned action is warranted; or (3) the petitioned action is warranted, but presently precluded by other pending proposals to list species of higher priority, provided that

13

expeditious progress is being made in listing other species. 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.14(b)(3).

37.     The information relied upon for final listing decisions should be peer reviewed. 59 Fed. Reg. 34270 (July 1, 1994).

38.     The decision not to list a species is subject to judicial review. 16 U.S.C. § 1533(b)(3)(C)(ii).

39.     When a species is listed as threatened or endangered, the ESA requires that the Secretary designate critical habitat concurrently with the listing. 16 U.S.C. §§ 1533(a)(3), (f).

40.     The ESA makes it unlawful for any person to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect a listed species, or attempt to engage in any of the foregoing actions, unless the action is specifically permitted by a special rule or permit issued by the Secretary. 16 U.S.C. §§ 1538–1539. The ESA also requires that all federal agencies "carry out programs for the conservation" of threatened and endangered species and consult with the Secretary in order to ensure that their actions are "not likely to jeopardize the continued existence" of such species or "result in the destruction or adverse modification" of their critical habitat. 16 U.S.C. §§ 1536(a)(1), (2).

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

**A. The Pryor Mountain Wild Horse Population.**

41.     The Pryor Mountain Wild Horse Range is essential for preserving the Old Spanish genetic lineage of wild horses.

42.     This population resides in Montana and Wyoming, nestled between the Pryor Mountains and the Bighorn Canyon National Recreation Area.

43.     Akin to other wild horse populations in the United States, the Pryor Mountain mustangs are subject to removal to reach the Bureau of Land Management's designated "appropriate management level" (hereinafter, "AML") of the herd. However, with an AML set at 90 to 120 horses for the range, this level jeopardizes this distinct population segment.

44.     Many geneticists recommend that the Pryor Mountain wild horse population maintain its genetic diversity and increase its population size to a much greater number to survive. The Pryor Mountain wild horse population's current size is significantly small, which indelibly reduces the population's resiliency to culling, removals, and environmental changes in the range. Geneticists argue that these factors would result in a genetic bottleneck and would consequently place the Pryor Mountain wild horses and the Old Spanish genetic lineage at risk.

45.     As a result, Plaintiff filed a petition specifically to protect this DPS from the risk of extinction by having the Pryor Mountain wild horse population listed as either "threatened" or "endangered" under the ESA.

**B.  Petition to List the Pryor Mountain Wild Horse Population**

46.     On June 12, 2017, Friends of Animals submitted a petition to Defendants to list the Pryor Mountain wild horse population as a threatened or endangered DPS under the ESA.

47.     In a letter dated July 20, 2017, FWS notified Friends of Animals that the agency was unable to process the request because the submission did not qualify as a petition under FWS regulations.

48.     Specifically, FWS concluded that the petition failed to meet the following regulatory requirement:

> Notification of Intent to file petition: For a petition to list, delist, or reclassify species, or for petitions to revise critical habitat, petitioners must provide notice to the State agency responsible for the management and conservation of fish, plant or wildlife resources in each State where the species that is the subject of the petition occurs. This notification must be made at least 30 days prior to submission of the petition. This notification requirement shall not apply to any petition submitted pertaining to a species that does not occur within the United States.

50 C.F.R. § 424.14(b).

## C. The Challenged 30-Day Minimum State Notification Addition

49.    On September 27, 2016, Defendants published notice of their final revised ESA listing regulations. This revision for the first time introduced the requirement that notice be given to states at least thirty days in advance of filing a petition with FWS.

50.    FWS explained that this petition process change would "allow States time and opportunity to send data directly to the Services, should they desire. This change acknowledges the special role of States as evidenced in section 6 of the [ESA] while not overly burdening petitioners." 81 Fed. Reg. 66464 (Sept. 27, 2016). Further, the final rule does not require states to submit information regarding a proposed or filed petition; "whether they do so will be their choice." *Id.* This new regulation allows affected states to request a copy of the filed petition from FWS.

51.    During the minimum 30-day notice period, as well as during the 90-day finding stage, affected states are allowed to submit information to FWS regarding a particular petition prior to the 90-day finding determination.

52.    FWS is under the belief that this new regulation, which expands the evidentiary scope of review, "does not infringe on the right of the public to submit petitions under section 4" of the ESA; "[r]ather, it allows States the opportunity, should they choose, to participate in the petition process by

providing information to the Services, while at the same time removing any potentially onerous requirements on petitioners." 81 Fed. Reg. 66464 (Sept. 27, 2016).

53.     However, Congress has directly spoken to the proper balance of timeliness and public participation in the ESA listing process. Congress specifically amended the ESA to include mandatory deadlines for the Secretary to respond to listing petitions: first a preliminary review at the 90-day finding stage, and subsequently an opportunity for public participation at the 12-month status review stage.

54.     Courts have repeatedly held that at the 90-day finding stage, FWS is prohibited from soliciting information from states or selected third-parties, particularly because a positive 90-day finding would allow any interested party to fully participate in the petition process at the 12-month stage through notice and comment rulemaking.

55.     By requiring that petitioners file a notice of intent letter with all affected states regarding their petition, this 30-day minimum extends the ESA 90-day finding stage to a 120-day process and gives states a doubled-opportunity to comment on a particular petition.

56.     This introduces bias into the petition review process and opens the door to further improper consideration of substantive information

provided by the states at the 90-day stage, rather than containing FWS's 90-day review to the four corners of the petition itself, as required by the ESA.

57.     Pursuant to the ESA citizen suit provision, 16 U.S.C. § 1540(g)(2), Plaintiff sent Defendants notice of its intent to sue on December 14, 2017.

58.     Defendants received Plaintiff's notice of intent to sue on December 21, 2017, more than 60 days ago.

59.     Defendants responded to Plaintiff's notice of intent to sue, denying any violations of the ESA, in a letter dated February 1, 2018.

## CLAIM FOR RELIEF

### (Defendants' Refusal to Issue a 90-Day Pryor Mountain Wild Horses Finding Violates the Endangered Species Act and is Otherwise Arbitrary and Capricious)

60.     Plaintiff herein incorporates all information and allegations contained in the preceding paragraphs.

61.     In requiring that Plaintiff provide a copy of its petition to state agencies at least thirty days prior to its submission to FWS, Defendants: (1) apply incorrect legal standards, as the requirement improperly considers consultation with state agencies prior to the initial 90-day finding; (2) fail to make a timely finding on whether the petition presented substantial information that listing may be warranted "[t]o the maximum extent practicable, within 90 days after receiving the petition" 16 U.S.C. §

1533(b)(3)(A); and (3) made a decision otherwise arbitrary, capricious, and contrary to law in violation of the ESA within the meaning of the APA. 16 U.S.C. § 1533(b); 5 U.S.C. §§ 701–706.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA and the APA by impermissibly requiring a minimum 30-day notice to affected states and thus refusing to issue a 90-day finding on the Pryor Mountain wild horse petition to list this DPS as threatened or endangered;

2. Vacate 50 C.F.R. § 424.14(b) in so far as it contains an impermissible 30-day notice requirement, and issue a finding on the Pryor Mountain wild horse petition within 60 days;

3. Award Plaintiff's costs, including reasonable attorney fees pursuant to the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Grant Plaintiff such other relief as the Court deems just and proper.

Dated: April 3, 2018                Respectfully Submitted,

 /s/ Guy Alsentzer
Guy Alsentzer
PO Box 128
Bozeman, MT 59771
(406) 570-2202
GuyAlsentzer@gmail.com

Michael R. Harris (*pro hac vice* to be submitted)
Director, Wildlife Law Program
Friends of Animals
7500 E. Arapahoe Rd., Suite 385

20

Centennial, CO 80112
720-949-7791
michaelharris@friendsofanimals.org