IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| FRIENDS OF ANIMALS,<br><br>                Plaintiffs,<br><br>vs.<br><br>DAVID BERNHARDT, in his official capacity of Secretary of the Interior; *et al.*,<br><br>                Defendants. | CV 18-64-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiff Friends of Animals ("Friends") brings this action challenging Federal Defendants' summary denial of its petition to list the Pryor Mountain wild horse population as threatened or endangered under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq. (Doc. 1.) Currently pending before the Court are the parties' cross-motions for summary judgment. (Docs. 32, 35.)

Having reviewed the parties' arguments and submissions, the Court makes the following findings and recommendations.

I. **BACKGROUND**

Congress enacted the Endangered Species Act to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). Any interested person may file a petition with the Secretary of the

1

Interior to list a species as threatened or endangered. 16 U.S.C. § 1533(b)(3)(A). Whether a species should be listed as endangered or threatened is determined by the standards and deadlines set forth in 16 U.S.C. § 1533. The U.S. Fish and Wildlife Service ("the Service" or "FWS") has also implemented regulations for the processing of petitions. 50 C.F.R. § 424.14.

On May 21, 2015, the Service published a proposed rule to revise the regulation governing the petition process. (AR2-0000040.) The stated purpose of the proposed rule change was "to improve the content and specificity of petitions and to enhance the efficiency and effectiveness of the petitions process to support species conservation." (*Id.*) After revisions and two public comment periods, the new regulation was enacted, with an effective date of October 27, 2016. (AR2-000003-39; 0001922-1929; 0002381-2406.) The new regulation requires, among other things, that a petitioner provide notice to the State at least 30 days prior to filing a petition under the ESA.[1] 50 C.F.R. § 424.14(b).

/ / /

---

[1] Initially, the proposed rule required pre-coordination with the State before a petition could be filed. The initial rule required petitioners to provide a copy of the petition to the relevant State agencies at least 30 days before submission, and submit any data or written comments received from the State agencies with their petition. (*See* AR2-0000042; 0000048.) The proposed rule also required petitioners to certify that they had gathered all relevant information on the subject species, including information from Web sites maintained by the State, and submit the information with the petition. (*Id.*) These requirements were ultimately eliminated and replaced with the notice provision. (AR2-0001922; 0001924; 0001928; 0002404-05.)

Specifically, the notice provision provides:

Notification of intent to file petition. For a petition to list, delist, or reclassify a species, or for petitions to revise critical habitat, petitioners must provide notice to the State agency responsible for the management and conservation of fish, plant, or wildlife resources in each State where the species that is the subject of the petition occurs. This notification must be made at least 30 days prior to submission of the petition. This notification requirement shall not apply to any petition submitted pertaining to a species that does not occur within the United States.

50 C.F.R. § 424.14(b). The rule further provides that a petition must contain:

[C]opies of the notification letters or electronic communication which petitioners provided to the State agency or agencies responsible for the management and conservation of fish, plant, or wildlife resources in each State where the species that is the subject of the petition currently occurs.

50 C.F.R. § 424.14(c)(9).

On June 12, 2017, Friends submitted a petition to Defendants seeking to list the Pryor Mountain wild horse population as a threatened or endangered distinct population segment under the ESA. (AR1-0000001-49.) On July 20, 2017, the petition was rejected for failure to comply with the notice provision. (AR1-0001711-1712.) Friends was informed that the submission did "not qualify as a petition" because it was missing "copies of the notification letters or electronic communications that the petitioner provided to State agencies responsible for the management and conservation of fish, plant, or wildlife resources in each State where the species that is the subject of the petition currently occurs." (AR1-0001712.) Friends was advised that it could resubmit the request after supplying

3

the missing documentation. (AR1-0001711.) To date, Friends has not resubmitted the petition.

Friends now brings this lawsuit challenging the notice provision. (Doc. 1.) Friends alleges the application of the notice provision in this case violates the ESA and is arbitrary, capricious, and contrary to law within the meaning of the Administrative Procedure Act, 5 U.S.C. § 701, et seq.

## II. LEGAL STANDARDS

Judicial review of administrative decisions involving the ESA is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. 5 U.S.C. § 706(2)(A). *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Navy*, 898 F.2d 1410, 1414 (9th Cir. 1990). In reviewing an agency action under the APA, the Court must determine whether the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,* 463 U.S. 29, 43 (1983). "An agency acts contrary to the law when it fails to abide by and implement the direction and intent of Congress or when it acts

contrary to its own rules and requirements." *Upper Missouri Waterkeeper v. United States Envtl. Prot. Agency*, 377 F. Supp. 3d 1156, 1162 (D. Mont. 2019). Review under this standard is narrow, and the reviewing court may not substitute its judgment for that of the agency. *Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).

When the action under review involves the agency's interpretation of a statute, reviewing courts follow the framework set forth in *Chevron v. Natural Res. Defense Council*, 467 U.S. 837 (1984). "*Chevron* deference is appropriate where the agency can demonstrate that it has the general power to make rules carrying the force of law and that the challenged action was taken in exercise of that authority." *Alaska Wilderness League v. U.S. E.P.A.*, 727 F.3d 934, 937 (9th Cir. 2013) (citing *Sierra Club v. EPA,* 671 F.3d 955, 962 (9th Cir. 2012)). Here, Congress explicitly granted the Service authority to promulgate agency guidelines for the submission of petitions under the ESA. 16 U.S.C. § 1533(h).

Under *Chevron*'s two-step framework, the reviewing court first determines "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. Where

5

Congress "has explicitly left a gap for the agency to fill," the agency's interpretation of the statute is "given controlling weight" unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Id.*  See also *Arizona Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1253 (9th Cir. 2007).

Summary judgment is the appropriate mechanism for courts to review a decision of an administrative agency under the APA.  *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985); *Nw. Motorcycle Ass'n v. United States Dep't Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).  The district court is not required to resolve any facts in reviewing an administrative proceeding.  Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental*, 753 F.2d at 769.

## III.  DISCUSSION

Friends[2] moves for summary judgment on the following grounds: (1) the notice provision is inconsistent with the ESA's legal standards for review of

---

[2] Friends asserts that it has standing based on the standing of its staff and members. Defendants do not challenge Friends' standing to bring this action.  An organization has standing to sue when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  Individual members would have standing to sue in their own right if they have (1) "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

petitions; (2) the notice requirement alters the statutory deadlines and unlawfully removes petitioners' discretion to control the timing of filing petitions; and (3) the notice provision is inconsistent with the APA. (Doc. 32.) Defendants filed a cross-motion for summary judgment asserting Friends has failed to establish that the petition was improperly denied or that application of the notice provision in this case is contrary to law. (Doc. 35.)

### A. Whether Application of the Notice Provision is Inconsistent with the ESA's Legal Standard for Review of Petitions

The ESA sets forth a two-step process for the review of petitions to list a species. When a petition is filed, the Service generally has 90 days to make an initial determination of whether the petitioned action may be warranted. 16 U.S.C. 1533(b)(3)(A). If the initial review is positive, the Service then has 12 months from the date the petition was received to conduct a status review and make a final determination. § 1533(b)(3)(B).

Specifically, the ESA provides:

---

action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 180-81 (2000) (*citing Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)). "Once plaintiffs seeking to enforce a procedural requirement establish a concrete injury, 'the causation and redressability requirements are relaxed.'" *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (*citing W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485 (9th Cir. 2011)). The Court finds Friends has demonstrated sufficient injury to establish standing based on the declarations of Craig Downer and Michael Harris. (*See* Doc. 33-1; 33-2.)

7

> (A) To the maximum extent practicable, within 90 days after receiving the petition of an interested person . . . to add a species to, or remove a species from, either of the lists published under subsection (c), the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted. If such a petition is found to present such information, the Secretary shall promptly commence a review of the status of the species concerned. The Secretary shall promptly publish each finding made under this subparagraph in the Federal Register.
>
> (B) Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following findings:
>
>> (i) The petitioned action is not warranted . . .
>>
>> (ii) The petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action in accordance with paragraph (5); [or]
>>
>> (iii) The petitioned action is warranted, but [precluded].

16 U.S.C. § 1533(b)(3)(A)-(B).

Friends first alleges the state notice requirement in 50 C.F.R. § 424.14(b) is inconsistent with the ESA's standard of review, because the ESA requires the initial 90-day finding to be based on the information in the petition. Friends asserts that by requiring pre-filing notice to the State, the Service is attempting to obtain information from third parties that should not be considered prior to making the 90-day finding. Defendants counter that the notice provision is consistent with Congress' directive that the Service cooperate and coordinate with the states.

Under the first step of the *Chevron* analysis, the Court begins with the plain language of the statute. *Chevron,* 467 U.S. at 842-43. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Alaska Wilderness League v. EPA*, 727 F.3d 934, 938 (9th Cir. 2013) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

Here, the ESA mandates the Service "shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). The ESA does not, however, explicitly address the contents of the petition. Rather, the statute only sets forth the timelines and standards under which the petition is to be assessed. The ESA permits the Service to promulgate guidelines to insure the petition process is efficient and effective. 16, U.S.C. § 1533(h). But the ESA is silent as to whether such guidelines may require pre-filing notice to the State. The ESA neither requires, nor explicitly prohibits such a requirement. The Court therefore finds the ESA is silent as to whether a pre-filing notice requirement is either allowed or disallowed. Accordingly, the Court must turn to the second step of the *Chevron* analysis.

Under the second step, if "the agency's statutory interpretation fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give [that] judgment controlling weight." *Arizona Health Care Cost*

9

*Containment Sys. v. McClellan*, 508 F.3d 1243, 1249 (9th Cir. 2007) (citing *U.S. v. Haggar Apparel Co.,* 526 U.S. 380 (1999)). "Although the Court must give deference to an agency's construction of a statutory provision it is charged with administering," the Court "must reject those constructions that are contrary to clear congressional intent or that frustrate the policy Congress sought to implement." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002).

Defendants assert the notice provision is reasonable in light of the ESA's directive that the Service cooperate and coordinate with States in making listing determinations. Friends, on the other hand, argues the notice provision is inconsistent with Congress' intent because the structure of the ESA demonstrates that the State's involvement should occur only after the Service has made the initial 90-day finding on the petition. Friends further points out that courts have held the Service may not solicit and accept information from States before making the 90-day finding.

Defendants argue that the ESA directs that "[i]n carrying out the program authorized by this chapter, the Secretary shall cooperate to the maximum extent practicable with the States." 16 U.S.C. § 1535. Thus, it is clear that Congress envisioned States would have a role in the listing process. Indeed, the ESA contains specific provisions that require the Service to: take into account efforts being made by the State to protect the species under consideration, § 1533(b)(1)(A); to provide notice to the State if the Service proposes to list the

10

species, § 1533(b)(5)(A)(ii); and to submit justification to the State if it adopts a regulation that is inconsistent with the State's comments on a petition, § 1533(i). Therefore, at first glance it would appear the notice provision is consistent with, or at least not unreasonable interpretation of these portions of the ESA. But a closer review of these provisions indicates Congress intended the State's participation to occur after the initial 90-day review period.

For example, § 1533(b)(1)(A), captioned "Basis for determinations" provides that the Service "shall make determinations required by subsection (a)(1) [whether any species is an endangered species or threatened species] solely on the basis of the best scientific and commercial data available to [it] after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State . . . to protect such species[.] 16 U.S.C. § 1533(b)(1)(A). The "review of the status of the species" is conducted only after a positive 90-day finding is made. § 1533(b)(3)(A). Section 1533(b)(1)(A) certainly does not mandate that review of a state's efforts to protect a species occur after the 90-day period. But coupling the state efforts review with the status of species review supports the conclusion that these inquiries were intended to take place in the second stage of the process.

Further, the provisions requiring notice to the state provide for notice after the 90-day period. Section 1533(b)(5)(A)(ii) provides that if the Service makes a positive 90-day finding, the Service must "give actual notice of the proposed

regulation (including the complete text of the regulation) to the State agency in each State in which the species is believed to occur . . . and invite the comment of such agency, and each such jurisdiction." This notice provision expressly applies only after the 90-day review is completed. § 1533(b)(3)(B)(ii).

Additionally, the ESA states that if the Service ultimately adopts a regulation that is inconsistent with the State's comments that were submitted after the notice given in accord with subsection (b)(5)(A)(ii), the Service "shall submit to the State agency a written justification for [its] failure to adopt regulations consistent with the agency's comments[.]" 16 U.S.C. § 1533(i). Again, this provision requires action after both the 90-day review and 12 month status review is completed. Thus, none of the sections relied upon by the Service provide for notice and participation by the states during the initial 90-day review period.

The notice provision is also inconsistent with the standard of review that applies during the preliminary 90-day review. "At the 90-day stage, the question is not whether the designation *is* warranted, only whether it *may* be." *Ctr. for Biological Diversity v. Kempthorne*, 2007 WL 163244, *7 (N.D. Cal. Jan. 19, 2007) (emphasis in original). The 90-day review is meant to be a cursory review to determine whether the scientific or commercial information in the petition is substantial. *McCrary v. Gutierrez*, 2010 U.S. Dist. LEXIS 10608, *6 (N.D. Cal. Feb. 8, 2010); 16 U.S.C. § 1533(b)(3)(A). Whereas, the 12 month status review involves a full assessment of the petition's merits, including consideration of

public comments, consideration of scientific or commercial information outside what is supplied in the petition, and proposed rulemaking. *McCrary*, 2010 U.S. Dist. LEXIS 10608 at 7, 11; §1533(b)(3)(B); (b)(5). These different standards of review suggest that in cases of contradictory evidence, the Service "must defer to information that supports [the] petition's position." *Kempthorne*, 2007 WL 163244 at *4. As such, the Service should not "discount information submitted in a petition solely because other data might contradict it." *Id.* Rather, the Service "should make the 'may be warranted' finding and then proceed to the more-searching next step in the ESA process." *Id.* at *7. As one court has explained, "[a]lthough there is no explicit prohibition against consulting extra-petition information at the 90-day stage, the statute's language and procedural structure suggest that the petition itself should be the inquiry's primary focus." *McCrary*, 2010 U.S. Dist. LEXIS 10608 at *7.

Finally, case law construing the ESA illustrates that the Service's interpretation of the ESA review process is not reasonable. For example, in *Ctr. for Biological Diversity v. Morgenweck*, 351 F.Supp.2d 1137 (D. Colo. 2004), the issue before the court was whether the Service improperly solicited and considered information from State and federal agencies during the 90-day review period. There, the Service had solicited twelve opinions from outside sources after the petition was filed, and then denied the petition without conducting a 12 month status review. The court determined the Service's consideration of the outside

13

information "during the 90-day review was overinclusive of the type of information the ESA contemplates to be reviewed at this stage. Such a targeted information gathering campaign, began only after the Petition had been filed, was improper." *Morganweck*, 351 F.Supp.2d at 1143. The court explained that it was one thing for the Service to look into its own files, but another to create new research files post-petition. The court held "petitions that are meritorious on their face should not be subject to refutation by information and views provided by selected third-parties solicited by FWS." *Id.* Instead, [i]nvitations by FWS to others to respond to the Petition should await the 12-month status review." *Id.*

Likewise, in *Colorado River Cutthroat Trout v. Kempthorne*, 448 F.Supp.2d 170 (D. D.C. 2006), the court determined the Service's 90-day review of a petition was contrary to law because it had solicited information and opinions from selected State and federal agencies. The court held the ESA "does not authorize the FWS to weigh the information provided in the petition against information selectively solicited from third parties." *Id.* at 176. Rather, the court noted that both the ESA and its implementing regulations, "make plain that the 90-day review is to be based on the petition alone or in combination with the FWS's own records." *Id.* at 177.

Numerous other courts "faced with the issue of what evidence should be considered during the 90-day review have held that the agency may only consider information within the four corners of the petition." *McCrary*, 2010 U.S. Dist.

LEXIS 10608 at *17 (collecting cases). *See e.g. Western Watersheds Project v. Hall*, 2007 WL 2790404, *6 (D. Idaho Sept. 24, 2007) ("It was improper for the Service to make an outside solicitation or inquiry about the Petition and consider the responses when making its 90-Day Finding."); *Western Watersheds Project v. Norton*, 2007 U.S. Dist. LEXIS 71751, *21, 26 (D. Idaho Sept. 26, 2007) (holding the "ESA expressly limits the Service to reviewing the information presented in the Petition and the information contained in the Service's files" and stating that although the court appreciated "the efforts of the Service to compile a complete and accurate 90-Day Finding, seeking additional information at this stage is precluded by the ESA"); *Ctr. for Biological Diversity v. Kempthorne*, 2008 WL 659822, *13-14 (D. Ariz. March 6, 2008) (holding "the FWS unlawfully considered information from an outside agency, the Arizona Game & Fish Department [], at the 90-day stage."); *Western Watersheds Project v. Kempthorne*, 2009 WL 10678130, *7 n.10 (D. Idaho March 31, 2009) (noting it was inappropriate for the Service to consider information it requested from the Idaho Department of Fish and Game during the 90-day period); *WildEarth Guardians v. Secretary of Interior*, 2011 U.S. Dist. LEXIS 38736 *24 (D. Idaho Feb. 11, 2011) ("At the 90-day finding stage, the agency may only consider information within the four corners of the petition.").

      The rational underlying these cases was the courts' concern with the Service denying petitions at the 90-day stage based on selective information that was not

15

subject to public comment or input from all interested parties. The court in

*Morgenweck* explained:

> FWS could not simply bypass the initial 90-day review process and go directly to a 12-month status review. . . . FWS admittedly did not invite or seek public comment from all interested parties, but only state and federal regulatory agencies. While it certainly is a 'logical position that other [regulatory agencies[] who have an independent mission to manage wildlife are excellent sources of available information,' as defendants contend, FWS is required to consult not just with these entities, but with all parties with relevant information before a determination is made at the 12-month stage."

*Morganweck*, 351 F.Supp.2d at 1143-44. *See also Colorado River Cutthroat Trout*, 448 F.Supp.2d at 176 ("The FWS simply cannot bypass the initial 90-day review and proceed to what is effectively a 12-month status review, but without the required notice and the opportunity for public comment."); *Western Watersheds Project v. Hall*, 2007 WL 2790404 at *6 (stating the Service's communication with a third party to obtain information during the 90-day review "was improper, particularly since the public was not given a chance to respond"); *Western Watersheds Project v. Kempthorne*, 2009 WL 10678130, at *7 ("Because the Service relies heavily on Dr. Campton's analysis of the 2006 Whiteley article in refuting the Petition's claims . . . and the petitioner had no opportunity to address the Whiteley article, the Court finds the Service violated the 90-day Finding stage standard."); *Western Watersheds Project v. Norton*, 2007 U.S. Dist. LEXIS 71751, *27 (explaining that weighing information in the petition against information

selectively obtained from third parties improperly converts the 90-day review into a 12-month status review).

These concerns apply equally here. The notice provision created a mechanism by which the Service can obtain targeted information from the State to be considered at the 90-day finding stage, without any opportunity for public comment. (AR2-0002396.) The only significant difference is that the Service is not soliciting the information directly; it is relying upon notice from a petitioner to prompt input from the states. Defendants also attempt to distinguish *Morganweck* on the basis that the court there was concerned with solicitation in response to an already-filed petition. Whereas, here, the notice provision applies before the petition is filed. But these distinctions provide no substantive difference; the intended effect of the notice provision is the same. The notice provision is a targeted means for the Service to obtain information from the State outside the 12-month status review. Indeed, in its responses to comments on the final rule, the Service indicated that it hoped the notice provision would spur States to provide it with information. *See* AR2-0002384 ("This notification will allow States time and opportunity to send data directly to the Services, should they desire."); AR2-0002385 ("[W]e value the input and expertise of our State partners and wish to provide them the opportunity to be aware that species in their State are the subject of petitions and to provide pertinent information on those species to the Services, should they have such information and wish to share it." "This final rule does not

17

require the States to submit information to the Services. . . . Rather it allows States the opportunity, should they choose, to participate in the petition process by providing information to the Services[.]"). This is akin to the sort of "targeted information campaign" that was rejected in the clear line of authority discussed above.

Accordingly, the Court finds the notice provision is inconsistent with the ESA. As such, the Service's reliance on the notice provision to reject Friends' petition was "arbitrary, capricious, and manifestly contrary to the statute." *Chevron*, 467 U.S. at 843.

**B.    Remedy**

Having found the notice provision invalid and not a proper basis for the Service to reject Friends' petition,[3] the Court recommends the Service's decision

---

[3] In light of the Court's determination that the notice provision is invalid, the Court need not reach Friends' remaining two arguments for why the notice provision constitutes an arbitrary, capricious or unlawful action within the meaning of the APA. Nevertheless, the Court notes that Friends' remaining arguments are unpersuasive. First, the notice provision does not extend the statutory deadlines because the notice period is by definition not part of the 90-day timeline. The 90-day review is not triggered until the petition is filed. The pre-filing notice does not change this. Second, Friends' argument that the notice provision is inconsistent with the APA is premised on comments submitted by members of Congress in response to the initial May 2015 proposed regulation. The comments took issue with the original proposal to require petitioners to pre-file petitions and coordinate with the States. Those requirements, however, were ultimately deleted from the final regulation.

denying Friends' petition be vacated, and the petition be remanded to the agency to make an appropriate 90-day finding.

## IV. Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that:

1. Plaintiffs' Motion for Summary Judgment (Doc. 32) be **GRANTED**; and

2. Federal Defendants' Cross-Motion for Summary Judgment (Doc. 35) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or objection is waived.

DATED this 21st day of January, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge